IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-02574-WDM-BNB

SANDRA D. TOLLIVER,

    Plaintiff,

v.

ROY B. TRUE,
THE TRUE LAW FIRM, LLC, a Missouri limited liability company,

    Defendants.

---

**ORDER ON MOTION TO COMPEL ARBITRATION AND DISMISS
AND MOTION TO TRANSFER**

---

Miller, J.

This matter is before me on a motion to compel arbitration and dismiss filed December 26, 2006 by Defendants Roy B. True (True) and The True Law Firm, LLC (Defendants) (Docket No. 3) and a motion to transfer filed February 2, 2007 by Defendants (Docket No. 17). I have reviewed the parties' written arguments and their summary judgment evidence and find that oral argument is not required. Therefore, Plaintiff's request for oral arguments shall be denied. For the reasons that follow, the motion to compel arbitration and dismiss will be granted in part and denied in part and the motion to transfer will be denied.

Background[1]

---

[1] Unless otherwise noted, the background facts, drawn from the parties' factual statements and supporting evidence, appear to be undisputed.

PDF Final

The action arises out of Defendants' representation of Jennifer S. Jones (Jones). After being referred by James Lillard (Lillard), a friend, Jones engaged Defendants in August 2004 to draft an estate plan that included a living irrevocable trust, a pour over will, a living will, a healthcare proxy, and powers of attorney. Jones allegedly signed an engagement letter acknowledging the terms of the legal relationship including a provision that required arbitration of "any dispute" between Jones and Defendants. At the time Jones engaged Defendants she was already terminally ill with cancer. The trust and will documents prepared by Defendants made Lillard the sole beneficiary of Jones's estate, essentially disinheriting her sister, Sandra Tolliver (Plaintiff). After Jones's death in December 2005, litigation ensued with Lillard claiming to be Jones's sole beneficiary and Plaintiff challenging the validity of the trust and will documents. The probate court litigation ended in with an undisclosed settlement.

Plaintiff then filed a malpractice suit against Defendants in this Court in her capacity as the personal representative of the Estate of Jennifer S. Jones. Defendant is now moving to dismiss the action and compel arbitration pursuant to the Federal Arbitration Act based on the engagement letter allegedly signed by Jones.

## Standard of Review

Agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 4. A motion to compel arbitration based on an arbitration agreement is governed by 9 U.S.C. § 4 which states:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .  If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."

9 U.S.C. § 4.  Accordingly, when the parties to an agreement dispute whether arbitration is required by that agreement, a federal court may only resolve the issue when the parties dispute the making of the arbitration agreement itself; disputes that go to the making of the agreement as a whole must be resolved in arbitration.  *Id.*; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[A] federal court may consider only issues relating to the making and performance of the agreement to arbitrate."); *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (acknowledging judicial resolution of "issues that go to the 'making' of an agreement for arbitration").

When the dispute does involve the making of the arbitration agreement itself, courts apply a standard "similar to that governing motions for summary judgment." *Stein v. Burt-Kuni One, LLC*, 396 F.Supp.2d 1211, 1213 (D. Colo. 2005) (citing *Smarttext Corp. v. Interland, Inc.*, 296 F.Supp.2d 1257, 1262 (D. Kan. 2003)).  The defendant bears the initial burden of setting forth sufficient evidence to demonstrate that there is an enforceable arbitration agreement.  *Id.* (citing *Smarttext Corp.*, 296 F.Supp.2d at 1262).  Then, the burden shifts to the plaintiff to show that there is a "genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56."  *Id.*  (citing *Smarttext Corp.*, 296 F.Supp.2d at 1262).  If the plaintiff cannot show this then arbitration is appropriate for all disputes covered by the arbitration agreement.  But, if the plaintiff does establish a

genuine issue of material fact, then a jury trial "on the existence of the arbitration agreement is required." *Id.* (citing 9 U.S.C. § 4 and *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1987)); 9 U.S.C. § 4.

## Discussion

1.  Motion to Compel Arbitration and Dismiss

*a.*   *D.C.Colo.LCivR 7.1(A)*

As a preliminary matter, I address Plaintiff's argument that I should deny Defendants' motion for failure to comply with D.C.Colo.LCivR 7.1(A). Rule 7.1 states:

> A. Duty to Confer. The court will not consider any motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party or a pro se party, before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a pro se party to resolve the disputed matter.

D.C.Colo.LCivR 7.1(A). "The purpose of Rule 7.1A is to require the parties to confer and to attempt to resolve a dispute before incurring the expense of filing a motion and before requiring the court to address a disputed issue." *Qwest Corp. v. New Access Comm. LLC*, 2004 U.S. Dist. LEXIS 28525, at *16 (D. Colo. Mar. 31, 2004) (quoting *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635 (D. Colo. 2003)). However, motions under Federal Rules of Civil Procedure 12 and 56 are expressly exempted from the scope of Rule 7.1(A). As a motion to compel arbitration and dismiss is essentially a motion to dismiss under Rule 12, I will consider Defendants' motion. *See id.* (declining to dismiss motion even though moving party did not comply with Rule 7.1(A) because

the "primary thrust" of the motion to compel was a motion to dismiss under Fed. R. Civ. P. 12).

b.  *Agreement to Arbitrate*

Defendants move to dismiss the case and compel arbitration pursuant to a letter of engagement signed by Jones. Plaintiff opposes this motion and argues that the agreement was not actually signed by Jones and that the clause should be unenforceable even if it was signed by Jones. Defendants respond by arguing that Plaintiff's arguments cannot be judicially resolved but must be submitted to arbitration along with the claim of malpractice, basing their argument on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). Defendants' reading of *Buckeye*, however, is incomplete. Although *Buckeye* did reinforce the *Prima Paint* holding that federal courts may only resolve disputes pertaining to the making of the arbitration agreement itself and not the validity of the contract as a whole, *Buckeye* expressly acknowledged that the "issue of the contract's validity is different from the issue of whether any agreement between the [parties] was ever concluded." *Id. Buckeye* did not address or affect the rule that courts may resolve disputes regarding whether the person "ever signed the contract," *id.* (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851 (11th Cir. 1992), and whether the "signor lacked the mental capacity to assent," *id.* (citing *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003)).

Therefore, under *Buckeye*, I may resolve the dispute as to whether Jones's signature was forged and whether Jones had the mental capacity to agree to the terms contained in the engagement letter. And, as Plaintiff's argument that Defendants did not adequately explain the arbitration agreement to Jones goes to the making of the

arbitration agreement itself, I may also evaluate this argument.  *See* 9 U.S.C. § 4; *Prima Paint*, 388 U.S. at 404.  I may not, however, resolve the issue of whether there was fraud in the inducement, undue influence, or duress.  Indeed, *Prima Paint* expressly held that fraud in the inducement is a dispute as to the making of the entire agreement and, as such, must be submitted to arbitration.  388 U.S. at 403–04.

To meet their initial burden, Defendants have produced an engagement letter signed by Jones containing an clause subjecting "any dispute" between the parties to arbitration.  Plaintiff contends that this is not sufficient to satisfy Defendants' initial burden.  She argues that Defendants have not produced any evidence that Jones was the one to actually sign the letter.  For support, Plaintiff cites to the fact that True admitted that he did not technically know if Jones signed the letter because he did not watch her sign it.  Plaintiff also argues that there was not a witness to Jones's signature even though Defendants knew that Jones was terminally ill.  However, Plaintiff's argument that the signature is not Jones's is nothing more than speculation and her contention that a witness signature is necessary is wholly unsupported by any case law.  Furthermore, True's acknowledgment that he did not watch Jones sign the letter is insufficient to demonstrate that the signature was forged.  Agreements are often executed outside the presence of the other party and this fact does not render the agreement unenforceable.  Therefore, judging the engagement letter on its face, I conclude that Defendants have met their initial burden of demonstrating an enforceable arbitration agreement.

The burden now shifts to Plaintiff to show that there is a genuine issue of material fact as to the making of the agreement.  *Stein*, 396 F.Supp.2d at 1213.

Plaintiff sets forth two arguments for why the arbitration agreement is not enforceable: (1) Jones did not have capacity to enter into the agreement; and (2) Defendants failed to adequately explain the arbitration agreement to Jones. With respect to Plaintiff's capacity argument, Plaintiff argues that Jones's illness caused her to be incompetent and that Defendants have failed to show that Jones was competent. The burden at this stage of the evaluation, however, is on Plaintiff to show lack of capacity not on Defendants to show capacity. Plaintiff offers no more than the fact that Jones had terminal cancer to demonstrate that Jones was incompetent at the time that she signed the engagement letter. Although a severe illness may cause incompetence, it does not necessarily do so and, therefore, more evidence than a severe illness is required to raise a genuine issue as to capacity.

Second, Plaintiff argues that Defendants' failure to fully and adequately explain the arbitration clause renders the clause unenforceable. To establish a duty on Defendants to explain the arbitration clause to Jones, Plaintiff relies on the Restatement (Third) of the Law Governing Lawyers (2006), which prohibits a lawyer from prospectively limiting a lawyer's liability to a client for malpractice. Plaintiff argues that Defendants have not met the obligations of an attorney set forth in the comments to this section including to clearly and unambiguously express the intent to limit liability, to advise the client of the limitation, and to require that the client be independently represented. She argues that Defendants' failure in these matters cases the arbitration clause, as it relates to malpractice, to be unenforceable. I disagree. I note that the Colorado Rules of Professional Conduct include a similar prohibition on the conduct of attorneys. *See* Colo. Rules Prof'l Conduct R. 1.8(h) ("A lawyer shall not make an

agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement.")  However, an agreement to arbitrate does not prospectively limit the lawyer's liability to a client for malpractice, but rather "merely shift[s] determination of the malpractice claim to a different forum."  *McGuire, Cornwell & Blakey v. Grider*, 765 F.Supp. 1048, 1051 (D. Colo. 1991) (dealing with an analogous Oklahoma Rule of Professional Conduct and noting that a similar decision had been made in New York in *Monahan v. Paine Webber Group, Inc.*, 724 F.Sup. 224, 227 (S.D.N.Y. 1989)).  In fact, *McGuire, Cornwell & Blakey* is cited in the Restatement (Third) comments that Plaintiff relies upon.  Plaintiff attempts to distinguish this case by distinguishing the factual circumstances of the case; however, factual differences do not affect the determination that an arbitration agreement does not limit a lawyer's liability.

Plaintiff also argues that the limitation of exemplary damages in the engagement letter's arbitration clause is a prospective limit on Defendants' liability in violation of Rule 1.8.  However, the arbitration clause only limits punitive and exemplary damages to the extent permitted by law. Therefore, the prospective limit on exemplary damages, even if considered a limit on a lawyer's liability under Rule 1.8, does not violate Rule 1.8.  I conclude that Plaintiff has not raised a genuine issue as to the enforceability of the arbitration agreement based on Defendants' failure to explain the provision to Jones or the limitation on exemplary damages.

c.    *Unclean Hands*

Finally, Plaintiff argues that Defendants cannot enforce the arbitration agreement because they have unclean hands.  The unclean hands doctrine is applied

when "some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). "[W]hile equity does not demand that its suitors have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15 (1945). The doctrine allows courts to exercise a wide range of discretion as "[a]ny willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation" of the doctrine. *Id.* at 815.

Plaintiff contends that Defendants' actions during the probate litigation and their conduct in the current case including evading service, falsely accusing Plaintiff's counsel of making misrepresentations to the court, and seeking to transfer the case to Kansas are for the "unclean" purpose of delaying litigation and causing Plaintiff additional expense. However, Plaintiff goes no further in her argument than to list these acts. In fact, Plaintiff has produced no evidence or even argument that the motion to transfer to Kansas is meritless and for the purpose of delay. Furthermore, Plaintiff has not produced evidence that the letters to the court regarding misrepresentations to court were for the purpose of delay and not mere misunderstanding. Evading service, alone, is insufficient to apply the doctrine. Therefore, even given my wide discretion in its application, I find that Plaintiff has not shown conduct sufficient for invocation of the unclean hands doctrine.

2.      <u>Motion to Transfer</u>

Defendants move to transfer this case to Kansas based on the convenience of the parties. In support of this motion, Defendants simply argue that their witnesses would be inconvenienced by a trial in Colorado and that Missouri law applies to the case.

28 U.S.C. § 1404(a) permits me, in my discretion, to transfer this case to another district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice[.]" There is a "strong presumption in favor of . . . the plaintiff's chosen forum." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). The "presumption is overcome 'only when the private and public interest factors clearly point towards trial in the alternative forum.'" *Id.* (citing *Piper Aircraft Co.*, 454 U.S. at 255). Defendants bear the burden of showing the Plaintiff's chosen forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). Shifting the inconvenience from defendants to plaintiff, by itself, is not a permissible justification for granting the motion. *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992). The factors relevant to my resolution of the motion to transfer are set forth in *Texas Gulf Sulpher Co. v. Ritter*:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

371 F.2d 145, 147 (10th Cir. 1967).

In this case, Defendants point to only two factors that they allege warrant a transfer to Kansas. First, Defendants allege that the only relevant witnesses, Lillard and True, live in Kansas and Missouri, respectively, and that trial in Colorado would therefore be inconvenient. Further, they allege that Colorado may not have personal jurisdiction over Lillard to compel him to attend the trial. Plaintiff, however, has set forth a number of her witnesses who live in Colorado and for whom a trial in Kansas would be inconvenient. Furthermore, Defendants have produced no evidence beyond mere conjecture that Lillard would be unwilling or unable to travel to Colorado for trial. As an increase in convenience for one party at the expense of convenience for the other party is not a proper reason to disrupt the preference for the Plaintiff's chosen forum, Defendants' argument fails. *Scheidt*, 956 F.2d at 966.

Second, Defendants allege that because Missouri law will apply, transfer to Kansas is appropriate. Plaintiff contends that Colorado law applies to the action. Regardless of what law applies to this case, choice of law standing alone is insufficient reason to disrupt the Plaintiff's choice of forum. Indeed, although it is a factor to consider in a motion to transfer, federal courts are adept at applying law of foreign jurisdictions. Therefore, Defendants have failed to carry their burden of overcoming the presumption in favor of Plaintiff's chosen forum, and, therefore, a transfer of this case to Kansas is inappropriate.

Accordingly, it is ordered:

1. Defendants' motion to compel arbitration and dismiss, filed December 26, 2006 (Docket No. 3) is granted in part and denied in part. Pursuant to 9 U.S.C. § §

       3–4, the parties shall proceed with arbitration in accordance with the agreement with the American Arbitration Association (AAA) in Denver, Colorado. The motion to dismiss is denied as this Court shall retain jurisdiction until arbitration has been completed.

2. Defendants' motion to transfer filed February 2, 2007 (Docket No. 17) is denied.

3. This matter is stayed pending arbitration.

4. This case shall be administratively closed pending the resolution of the arbitration proceedings. If no action is taken to reopen this case on or before September 28, 2008, the case will be dismissed without prejudice without any further notice to any party.

DATED at Denver, Colorado, on September 28, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge